## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| MOLL INDUSTRIES, INC., *et al.*,[1] | ) | Case No. 10- 11371 ( ) |
| | ) | |
| Debtors. | ) | Joint Administration Pending |

### DEBTORS' MOTION PURSUANT TO SECTIONS 361, 362, 363 AND 507 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001 FOR AN ORDER: (1) AUTHORIZING USE OF CASH COLLATERAL; (2) GRANTING ADEQUATE PROTECTION LIENS AND ADMINISTRATIVE CLAIMS; (3) SCHEDULING AND APPROVING THE FORM AND METHOD OF NOTICE FOR A SUBSEQUENT HEARING; AND (4) GRANTING RELATED RELIEF

Moll Industries, Inc. and its affiliated debtors (the "Debtors"), debtors and debtors-in-possession in the above captioned Chapter 11 cases, hereby request, pursuant to Sections 361, 362, 363 and 507 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), that this Honorable Court enter an order: (i) authorizing the Debtors to use cash collateral; (ii) granting adequate protection liens and administrative claims; (iii) scheduling and approving the form and method of notice for a subsequent hearing; and (iv) granting related relief (the "Motion"). In support of the Motion, the Debtors rely on and incorporate by reference the Declaration of Jeffrey C. Merritt in Support of First Day Motions and Applications ( the "Merritt Declaration"), filed with Court concurrently herewith. In further support of this Motion, the Debtors, by and through their undersigned counsel, state the following:

---

[1] The Debtors are the following entities: Moll Industries, Inc.; Moll Holdings, Inc.; Moll Europe Holdings, LLC; and Moll Latin America Holdings, LLC.

# SUMMARY OF RELIEF REQUESTED

1.     By this motion ("Motion"), the Debtors request (a) pursuant to sections 361, 362, 363, and 507 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), (i) authority to use cash collateral (the "Cash Collateral") pursuant to section 363 of the Bankruptcy Code; (ii) authority to grant the Debtors' prepetition secured lenders adequate protection liens and superpriority administrative pursuant to sections 361, 362, 363, and 507 of the Bankruptcy code; and (b) the scheduling of a final hearing (the "Final Hearing") thereon.  Pursuant to Rule 4001(b) of the Federal Rules of Bankruptcy Procedure and Del. Bankr. L.R. 4001-2, the relevant provisions in the Interim Order are as follows:

(a)     <u>Name of Each Entity with Interest in Cash Collateral</u>.  (i) NexBank, SSB ("NexBank"), as Administrative Agent (in such capacity, the "Senior Agent") for itself and on behalf of Senior Lenders (defined below) under the Credit Agreement (defined below) and (ii) NexBank, as Administrative Agent (in such capacity, the "Subordinated Agent") for itself and on behalf of the Subordinated Lenders (defined below) under the Subordinated Note (defined below).

(b)     <u>Use of Cash Collateral</u>.  The Debtors shall use the Cash Collateral in accordance with the Budget (defined below).  The Debtors may use Cash Collateral in excess of the amount set forth in the Budget for a particular line-item so long as the percentage of deviation for all line-items during any week does not exceed ten (10%) percent, in the aggregate.  Any unused portion of the Variance (defined below) will carry over to the following week.  Motion, ¶ 13, Interim Order, ¶ 1.

(c)     <u>Termination Date</u>.  Use of Cash Collateral will terminate (the "Termination Date") on the earliest of:

   i.   the effective date of any confirmed plan of reorganization in the Chapter 11 Cases;

   ii.  the occurrence of any breach by the Debtors of the proposed interim order attached to this Motion (the "Interim Order") (including, but not limited to, the Debtors' failure to adhere to the Budget;

   iii. the dismissal of any of the Debtors' Chapter 11 Cases or the conversion of any such case to one under Chapter 7 of the Bankruptcy Code;

2

iv. upon and following the entry of an order authorizing the appointment in any of the Debtors' Chapter 11 Cases of a trustee or an examiner with enlarged powers (beyond those set forth in § 1106(a)(3) and (4) of the Bankruptcy Code), relating to the operation of the business of the Debtors;

v. the Interim Order is stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the Agent;

vi. the Court enters an order granting a party relief from the automatic stay with respect to any portion of the Collateral;

vii. this or any other Court enters an order or judgment in any of the Debtors' Chapter 11 Cases modifying, limiting, subordinating or avoiding the priority of any Indebtedness or the perfection, priority or validity of the Lenders' Pre-Petition Liens or Adequate Protection Liens or imposing, surcharging or assessing against the Senior Agent and the Senior Lenders or the Subordinated Agent or Subordinated Lenders or any Collateral any fees, costs or expenses, whether pursuant to section 506(c) of the Bankruptcy Code or otherwise; or

viii. May 31, 2010 (for Interim Order only).

Motion, ¶22; Interim Order, ¶ 11.

(d) <u>Carve Out</u>. Carve Out means the following amounts: (i) statutory fees payable to the United States Trustee and (ii) following the Termination Date, the payment of allowed professional fees and disbursements incurred by the Debtors or any official committee of unsecured creditors appointed in these cases (the "Committee") in an aggregate amount incurred after the Termination Date not in excess of an amount to be agreed upon between the Debtors and the Agent (plus all unpaid professional fees and expenses allowed by the Court that were incurred prior to the occurrence of the Termination Date). Motion, ¶ 16; Interim Order, 4.¶ 4.

(e) <u>Adequate Protection</u>. Pursuant to the proposed Interim Order, the Debtors will grant to the Administrative Agent, for the benefit of the Lenders: (i) a security interests in and liens on the Pre-Petition Collateral (defined below) and all other of the Debtors' now owned and hereafter-acquired real and personal property, assets and rights, of any kind or nature, wherever located, and the proceeds, products, rents and profits thereof (other than causes of action arising under the Bankruptcy Code); (ii) an allowed administrative expense claim with priority over all other administrative claims in these chapter 11 cases (subject only to the Carve-Out), including all claims of the kind specified under sections 503(b) and 507(b) of the Bankruptcy Code; and (iii) upon entry of the Interim Order, cash for

the reasonable pre- and post-petition professional fees and expenses incurred by the Agent under the Credit Agreement. Motion, ¶¶ 15-17; Interim Order, ¶¶ 3 – 5.

(f)    <u>Determination of the Validity, Enforceability, Priority, and Amount of the Indebtedness and the pre-petition Liens</u>. The Interim Order contains acknowledgments by the Debtors as to the validity, enforceability, priority and amount of the Indebtedness (defined below) and the Pre-Petition Liens (defined below), subject to a challenge period of seventy-five (75) days following the Petition Date or sixty (60) days following the appointment of the Committee. Motion, ¶¶ 10, 20 & 21; Interim Order, ¶ E, 8 & 9.

(vii)    <u>Control Waiver</u>. The Debtors seek a determination that no act committed or action taken by the Agent or the Lenders pursuant to an order approving this Motion, including without limitation, approval of the Budget, or the collection of any indebtedness owed to the Agent or Lenders, or by virtue of the interests, rights, and remedies granted to or conferred upon the Agent and/or the Lenders under the Credit Agreement or Loan Documents or the Interim Order, shall be used, construed, or deemed to hold the Agent or the Lenders to be in "control" of or participating in the governance, management, or operation of the Debtors for any purpose. Motion, ¶ 19; Interim Order, ¶ 14.

## JURISDICTION

2.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the requested relief are Sections 361, 362, 363 and 507 of the Bankruptcy Code.

## BACKGROUND

3.      On April 27, 2010 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code commencing the above captioned cases, which the Debtors have requested be jointly administered for procedural purposes only. The Debtors are operating as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4.      No committee has yet been appointed or designated.

4

5.     The Debtors are a significant provider of global injection molding and full-service contract manufacturing solutions for the medical, appliance, industrial, consumer and automotive markets.  They are also specialists in drug delivery, surgical devices, enclosures and fluid delivery products, and are considered one of the most experienced full-service contract manufacturer of custom injection molded components and assemblies to the appliance industry in North America. They have registered medical device establishment with the FDA in their manufacturing facilities in Seagrove, North Carolina and Donegal, Ireland.  As additional background and support for this Motion, the Debtors refer this Court to the Merritt Declaration, filed contemporaneously herewith and incorporated herein by reference.

**The Pre-Petition Credit Agreements**

6.     Prior to the Petition Date, the Senior Lenders made certain loans and advancements to debtor Moll Industries, Inc. ("Moll Industries") pursuant to that certain Amended and Restated Loan and Security Agreement dated as of December 31, 2004 by and among Moll Industries, Inc, as Borrowers, the Lenders that are signatories hereto (the "Senior Lenders") and Heritage Bank, SSB, as the Administrative Agent (the "Senior Agent"),[2] as the same may have been amended from time to time thorough the Petition Date (the "Senior Credit Agreement").  All such loans, financial accommodations and other amounts owing by the Debtors to the Senior Agent and the Senior Lenders under, or in connection with, the Senior Credit Agreement and the other collateral and ancillary documentation executed in connection therewith (as amended, supplemented or otherwise modified, the "Senior Loan Documents") are hereinafter referred to as the "Senior Pre-Petition Obligations".  The Senior Credit Agreement

---

[2] Heritage Bank, SSB has since changed its name to NexBank, SSB.  Thus, all references herein to the "Senior Agent" and "Subordinate Agent" are to NexBank.

matured on December 31, 2009 and the Senior Pre-Petition Obligations became due and owing on that date.

7.    Prior to the Petition Date, the Subordinated Lenders made certain loans and advancements to Moll Industries pursuant to that certain Amended and Restated Senior Subordinated Secured Note and Security Agreement dated as of December 31, 2004 by and among Moll Industries, Inc, as Borrowers, the Lenders that are signatories hereto (the "Subordinated Lenders") and Heritage Bank, SSB, as the Administrative Agent (the "Subordinated Agent"),[3] as the same may have been amended from time to time thorough the Petition Date (the "Subordinated Note"). All such loans, financial accommodations and other amounts owing by the Debtors to the Subordinated Agent and the Subordinated Lenders under, or in connection with, the Subordinated Note and the other collateral and ancillary documentation executed in connection therewith (as amended, supplemented or otherwise modified, the "Subordinated Note Documents") are hereinafter referred to as the "Subordinated Pre-Petition Obligations". The Subordinated Note matured March 10, 2010 and the Senior Pre-Petition Obligations became due and owing on that date.

8.    The remaining Debtors executed individual guarantees and security agreements with respect to both the Senior Credit Agreement (collectively, the "Senior Guarantees") and Subordinated Note (collectively, the "Subordinated Guarantees").

9.    As of the Petition Date, the Senior Pre-Petition Obligations totaled approximately $57,714,652.01, exclusive of interest, attorneys fees, costs, expenses or other charges and the Subordinated Pre-Petition Obligations totaled approximately $6,617,258.94, exclusive of

---

[3] Heritage Bank, SSB has since changed its name to NexBank, SSB. Thus, all references herein to the "Senior Agent" and "Subordinate Agent" are to NexBank.

interest, attorneys fees, costs, expenses or other charges. The Senior Pre-Petition Obligations and the Subordinated Pre-Petition Obligations (collectively, the "Indebtedness") are secured by liens on and security interests in substantially all of the Debtors' assets. Pursuant to an Intercreditor and Subordination Agreement between the Senior Lenders and the Subordinated Lenders (collectively, the "Lenders"), the liens and security interests of the Subordinated Lenders are subordinated to the liens and security interests of the Senior Lenders.

10.    Without prejudice to the rights, if any, of any other party (but subject to the limitations thereon described below in paragraphs 20 and 21, the Debtors admit that (i) the Senior Pre-Petition Obligations owing to the Senior Agent and the Senior Lenders under the Senior Credit Agreement, Senior Loan Documents and Senior Guarantees total at least $57,714,652.01 as of the Petition Date, exclusive of attorneys fees, costs, expenses or other charges; (ii) the Subordinated Pre-Petition Obligations owing to the Subordinated Agent and the Subordinated Lenders under the Subordinated Note, Subordinated Loan Documents and Subordinated Guarantees total at least $6,617,258.94 as of the Petition Date, exclusive of attorneys fees, costs, expenses or other charges (iii) the Senior Pre-Petition Obligations and Subordinate Pre-Petition Obligations constitute the legal, valid and binding obligations of the Debtors, enforceable in accordance with the Senior Credit Agreement, Senior Loan Documents and Senior Guarantees and the Subordinated Note, Subordinated Loan Documents and Subordinated Guarantees; (iv) no portion of the Indebtedness is subject to avoidance, subordination, recharacterization, offset, counterclaim or defense; and (v) the Debtors granted to the Lenders valid, perfected and enforceable liens upon and security interests (the "Pre-Petition Liens") in the collateral described in the Senior Credit Agreement, Senior Loan Documents and

Senior Guarantees and the Subordinated Note, Subordinated Loan Documents and Subordinated Guarantees (the "Pre-Petition Collateral").

### The Debtors' Need to Use Cash Collateral

11.     The Debtors have determined, in the exercise of their business judgment, that they require the use of Cash Collateral.  The Debtors have an immediate need to obtain use of the Cash Collateral for, among other things, the continuation of their business operations, the preservation and orderly disposition of their businesses and assets as a going concern, and the orderly administration of their estates.  The Debtors have no source of working capital other than through the use of Cash Collateral.  Without the use of Cash Collateral, the Debtors will be unable to pay necessary expenses.  The ability of the Debtors to obtain liquidity through the use of the Cash Collateral is vital to the Debtors efforts to maximize the value of their assets. Without this relief, the Debtors will be forced to shut down immediately, causing immediate and irreparable harm.

12.     The terms of the Debtors' proposed use of Cash Collateral have been negotiated in good faith and at arm's length between the Debtors, the Senior Agent on behalf of the Senior Lenders and the Subordinated Agent on behalf of the Subordinated Lenders.  The Debtors believe that the terms and conditions of the Debtors' proposed use of the Cash Collateral are fair and reasonable and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

**Proposed Terms for the Debtors Use of Cash Collateral**

13.     The Debtors request authority to use Cash Collateral in accordance with the budget attached hereto as Exhibit A (the "Budget");[4] *provided, however*, that the Debtors may exceed any line item in the Budget by up to ten percent (10%) in any week, so long as the aggregate amount of the Budget for any week is not exceeded by more than ten percent (10%) (the "Variance"). Any unused portion of the variance will carry over to the following week.

14.     The Debtors will deliver to NexBank and the Committee on Wednesday of each week (if not sooner) a reconciliation for the prior week of all budgeted amounts that compares for each line item the amounts forecast under the Budget to the actual amount achieved by the Debtors for such week, together with all other reasonably requested information. In addition, the Debtors shall provide NexBank with reasonable access to the Debtors' facilities, books and records, at reasonable times that shall not infringe upon the Debtors' normal operations.

**Proposed Adequate Protection**

15.     As adequate protection for the use of the Cash Collateral, the Debtors request authority to grant super-priority administrative expense claims against the Debtors' estates in favor of the Senior Agent, on behalf of and for the ratable benefit of the Senior Lenders and the Subordinated Agent, on behalf of and for the ratable benefit of the Subordinated Lenders pursuant to section 507(a)(2) and 507(b) of the Bankruptcy Code, which claims shall be in the amount of any post-petition diminution in the value of the Senior Lenders' and Subordinated Lenders' interest in the Cash Collateral or any of the Pre-Petition Collateral from and after the Petition Date (the "Adequate Protection Claims"). In addition, the Adequate Protection Claims shall have priority in payment over any and all administrative expenses of the kind specified or

---

[4] The Budget is subject to revision pending further discussions between the Debtors and the Agent.

ordered pursuant to any provision of the Bankruptcy Code, including without limitation, 11

U.S.C. §§ 105, 326, 328, 330, 331, and 726 and shall at all times be senior to the rights of the

Debtors, and any successor trustee or any creditor, in the Debtors' cases, or to the extent

permitted by applicable law, any subsequent proceeding under the Bankruptcy Code, provided

however that the Adequate Protection Claims shall be subject to the Carve-Out (defined below).

16.     As additional adequate protection, and in order to secure the Adequate Protection

Claims, the Debtors seek authority to grant the Senior Agent, on behalf of and for the ratable

benefit of the Senior Lenders, and to the Subordinated Agent, on behalf of and for the ratable

benefit of the Subordinated Lenders, and to the extent of any diminution in the value of the Pre-

Petition Collateral, effective immediately and without the necessity of the execution by the

Debtors of financing statements, mortgages, security agreements, or otherwise, in accordance

with section 361(2) of the Bankruptcy Code, replacement security interests in and liens

(collectively, the "Adequate Protection Liens") on the Post-Petition Collateral (as defined

below), all post-petition proceeds thereof and all post-petition assets of the Debtors and their

estates (excluding from the Post-Petition Collateral, however, all claims, causes of action and

proceeds thereof arising under sections 510, 544, 545, 546, 547, 548, 549, 550 and 551 of the

Bankruptcy Code (collectively, "Avoidance Actions," and all proceeds of the foregoing) and all

proceeds, rents and products of all of the foregoing and all distributions thereon (the "Post-

Petition Collateral," together with the Pre-Petition Collateral, the "Collateral"), in each case to

the same extent, validity and priority as the security interests and liens of the Senior Lenders and

Subordinated Lenders in and upon the Pre-Petition Collateral, whether such property and assets

were acquired by the Debtors before or after the Petition Date, including: (a) all proceeds of the

foregoing; (b) all accessions to, substitutions and replacements for, and profits and products of

10

the foregoing; (c) the Pre-Petition Collateral; and (d) all property of the Debtors held by the Lenders or the Agent. The Adequate Protection Liens shall be subject only to (i) valid, perfected, enforceable and unavoidable liens and security interests that were superior in priority to the Pre-Petition Liens prior to the Petition Date, and only to the extent such Pre-petition Liens are not otherwise subject to avoidance or subordination; (ii) following the occurrence of the Termination Date (as defined herein), the payment of allowed professional fees and disbursements incurred by the Debtors or any official committee of unsecured creditors appointed in the Chapter 11 Cases (the "Creditors Committee") in an aggregate amount incurred after the Termination Date not in excess of an amount to be agreed upon between the Debtors and the Agent (plus any unpaid professional fees and expenses allowed by the Court that were incurred prior to the occurrence of the Termination Date) (the "Professional Fee Carve-Out"); and (iii) the payment of United States Trustee Fees pursuant to 28 U.S.C. § 1930 (the "UST Carve-Out" and, together with the Professional Fee Carve-Out, the "Carve-Out"). The Adequate Protection Liens shall be of the same priority as the Pre-Petition Liens.

17.    As further adequate protection of the Agent's and Lenders' interests in the Pre-Petition Collateral, the Debtors request authority to pay the reasonable fees and disbursements of the Agent's attorneys and financial advisors incurred in connection with these chapter 11 cases upon submission of invoices to the Debtors with copies to the Committee and the U.S. Trustee, provided that such fees and disbursements will be paid only to the extent that such fees and disbursements relate to Pre-Petition Collateral or the granting of adequate protection to the Agent and Lenders. Subject to the following objection procedures, the Debtors shall promptly pay all reasonable fees and expenses submitted by the Agent's professionals within eleven (11) days after receipt of such invoices. Notwithstanding the foregoing, the Debtors, the Committee or the

U.S. Trustee may object to the reasonableness of such fees and expenses in writing within ten (10) days of receipt of such invoice. Any such objection must identify with specificity the particular objectionable entries. If such objection cannot be resolved within five (5) business days of service of such invoice (which deadline may be extended by mutual agreement of the Agent and the objecting party), the objecting party must file with the Court and serve upon such professional a Fee Objection limited to the issue of the reasonableness of the disputed fees and expenses; provided that the Debtors will timely pay any fees, costs and expenses not subject to a Fee Objection. Upon the filing of a Fee Objection, the Debtors request that the Court schedule and conduct an expedited hearing to determine the reasonableness of the fees and expenses identified therein.

18. Pursuant to the proposed Interim Order, for so long as no Termination Event (as defined below) has occurred, (i) the Debtors shall be permitted to pay administrative expenses allowable and payable under Sections 330, 331 and 503(b)(2) of the Bankruptcy Code, as the same become due and payable and in such amount as provided for in the Budget and (ii) such payments shall not be applied to reduce the Professional Fee Carve-Out.

19. Pursuant to the proposed Interim Order, no act committed or action taken by the Agent or the Lenders pursuant to the Interim Order, including without limitation, approval of the Budget, or the collection of any indebtedness owed to the Agent or Lenders, or by virtue of the interests, rights, and remedies granted to or conferred upon the Agent and/or the Lenders under the Credit Agreement or Loan Documents or the Interim Order, shall be used, construed, or deemed to hold the Agent or the Lenders to be in "control" of or participating in the governance, management, or operation of the Debtors for any purpose.

**Lien Review and Lien Contests**

20.    Pursuant to the proposed Interim Order, the Debtors' admissions and releases contained in paragraph 10 herein (i) shall be binding on the Debtors and the Debtors' estates and (ii) shall be binding upon all other parties in interest, including the Committee and any other official committee of appointed in these Chapter 11 Cases unless (1) a party has properly filed an adversary proceeding by no later than the date that is seventy-five days from the date of the entry of the Interim Order (or, in the case of the Committee, sixty (60) days from the appointment of such committee) (the "Investigation Termination Date") challenging the validity, perfection, enforceability, and extent of the Indebtedness and Pre-Petition Liens and any potential claims of the Debtors or their estates against Senior Agent, Subordinated Agent and/or the Lenders.  Any such adversary proceeding must be made by a party in interest with standing and must be properly commenced on or before the Investigation Termination Date.  If no such action is filed on or before the Investigation Termination Date, all holders of claims and interests as well as other parties in interest will be forever barred from bringing or taking any such action, and the Debtors' admissions and releases made in paragraph 10 will be binding on all parties in interest. Professional fees and expenses incurred by the Committee or any other Court-appointed professional in connection with any review and investigation may not exceed $25,000.

21.    Pursuant to the proposed Interim Order, no Court-appointed professional will be entitled to payment of any fees or expenses from Cash Collateral or the Carve-Out for commencing or prosecuting any claim or action, the purpose of which is to seek or the result of which would be to obtain any order, judgment, determination, declaration or similar relief (x) invalidating, setting aside, avoiding or subordinating, in whole or in part, the liens and security interests of the Senior Agent and the Senior Lenders or the Subordinated Agent or Subordinated

Lenders in the Collateral; or (y) preventing, hindering or otherwise delaying, whether directly or indirectly, the exercise by the Senior Agent or Subordinated Agent of any of its rights and remedies under the Interim Order.

### Termination of the Debtors' Right to Use Cash Collateral

22. Pursuant to the proposed Interim Order, each of the following will constitute a termination event (each, a "Termination Event"):

i. the effective date of any confirmed plan of reorganization in the Chapter 11 Cases;

ii. the occurrence of any breach by the Debtors of the Interim Order (including, but not limited to, the Debtors' failure to adhere to the Budget;

iii. the dismissal of any of the Debtors' Chapter 11 Cases or the conversion of any such case to one under Chapter 7 of the Bankruptcy Code;

iv. upon and following the entry of an order authorizing the appointment in any of the Debtors' Chapter 11 Cases of a trustee or an examiner with enlarged powers (beyond those set forth in § 1106(a)(3) and (4) of the Bankruptcy Code), relating to the operation of the business of the Debtors;

v. the Interim Order is stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of NexBank;

vi. the Court enters an order granting a party relief from the automatic stay with respect to any portion of the Collateral;

vii. this or any other Court enters an order or judgment in any of the Debtors' Chapter 11 Cases modifying, limiting, subordinating or avoiding the priority of any Indebtedness or the perfection, priority or validity of the Lenders' Pre-Petition Liens or Adequate Protection Liens or imposing, surcharging or assessing against the Senior Agent and the Senior Lenders or the Subordinated Agent or Subordinated Lenders or any Collateral any fees, costs or expenses, whether pursuant to section 506(c) of the Bankruptcy Code or otherwise; or

viii. May 31, 2010 for purposes of the Interim Order.

23. Upon the occurrence of a Termination Event (the "Termination Date") and three (3) Business Days after NexBank has provided notice of same to counsel for the Debtors, the Committee (if one has been appointed) and the Office of the United States Trustee, absent any

further Order of this Court entered during such three-day period, the Debtors' ability to use Cash Collateral will terminate and the Senior Agent's and Subordinated Agent's consent to the use of Cash Collateral will be deemed withdrawn. Upon the occurrence of a Termination Date, the parties' rights to seek a Court order lifting the automatic stay, providing adequate protection, allowing for the continued use of Cash Collateral or any other relief are preserved. The parties agree that the hearing on any motion filed by either the Debtors, the NexBank or the Committee following and arising from notice of a Termination Date (including, but not limited to, a motion to continue using Cash Collateral, a motion to lift the automatic stay or a motion to terminate exclusivity) will be expedited, and will, at the convenience of the Court, take place on the earliest to occur of (i) the next regularly scheduled pre-set hearing date in the Chapter 11 Cases; or (ii) such other date as the Court sets.

## ARGUMENT

### A. The Use of Cash Collateral is Warranted and Should Be Approved

24.     Pursuant to Section 363(c)(2)(A) of the Bankruptcy Code, "[t]he trustee may not use . . . cash collateral . . . unless (A) each entity that has an interest in such cash collateral consents or (b) the court, after notice and a hearing, authorizes such use . . . in accordance with the provisions of this section." 11 U.S.C § 363(c)(2). Section 363(c)(3) permits the Court to hold a preliminary hearing and to authorize the use of cash collateral on an interim basis where, as here, there is a reasonable likelihood that the debtor will be able to demonstrate that parties with an interest in the cash collateral are adequately protected under Section 363(e) of the Bankruptcy Code.

25.     As set forth above, the Debtors have an immediate need to use of the Cash Collateral for, among other things, the continuation of their business operations, the preservation

and orderly disposition of their businesses and assets as a going concern, and the orderly administration of their estates because the Debtors have no source of working capital other than through the use of Cash Collateral. Without the use of Cash Collateral, the Debtors will be forced to shut down immediately, with devastating consequences for the Debtors, their estates, and their creditors. Therefore the Debtors' ability to use Cash Collateral is of utmost importance to the preservation of the value of the Debtors estates. Moreover, as set forth below, the Lenders' interests in the Cash Collateral will be adequately protected. Accordingly, the Debtors have satisfied the requirements of Section 363(c)(2) of the Bankruptcy Code and the Debtors' use of Cash Collateral should be approved.

### B. The Proposed Adequate Protection Should Be Approved

26.     Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used ... or proposed to be used ..., the court, with or without a hearing, shall prohibit or condition such use ... as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Section 361 of the Bankruptcy Code sets forth the forms of adequate protection, which include periodic cash payments, additional liens, replacement liens, and other forms of relief. 11 U.S.C. § 361. What constitutes adequate protection must be decided on a case-by-case basis. *See In re O 'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985); *In re Shaw Indus., Inc.*, 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003). The focus of the requirement is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. *See In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) ("The whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained pre-bankruptcy.") (internal citation omitted).

27.     The Debtors recognize that the Senior Agent and the Senior Lenders and the Subordinated Agent or Subordinated Lenders are entitled, pursuant to Section 361 and 363(e) of the Bankruptcy Code, to adequate protection of their interests in the Cash Collateral to the extent there is a diminution in value of the Cash Collateral from and after the Petition Date. The proposed adequate protection discussed above will sufficiently protect the interests of the Agents and the Lenders in the Cash Collateral. Accordingly, the Debtors submit that the proposed adequate protection is fair and reasonable under the circumstances and satisfies the requirements of the Bankruptcy Code.

### C. Interim Approval Should Be Granted

28.     Bankruptcy Rules 400 l(b) and (c) provide that a final hearing on a motion to use cash collateral may not be commenced earlier than fifteen (15) days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral and the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.

29.     Pursuant to Bankruptcy Rules 400l (b) and (c), the Debtors request that the Court conduct an expedited preliminary hearing on this Motion and authorize the Debtors to use Cash Collateral on an interim basis, pending entry of a final order. As set forth above, the Debtors' have an immediate need to use Cash Collateral because it represents the Debtors' only source of working capital. Accordingly, the Debtors' ability to use Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtors, their estates and Creditors.

## BANKRUPTCY RULES 6003 AND 6004

30.     Because the Debtors have established that the use of cash Collateral is necessary to avoid immediate and irreparable harm, the requirements of Federal Rule of Bankruptcy Procedures have been satisfied.

31.     To implement the foregoing, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the ten-day stay under Bankruptcy Rule 6004(h).

## FINAL HEARING

32.     Pursuant to Rules 4001(b) of the Federal Rules of Bankruptcy Procedure, the Debtors request that the Court set a final hearing on the Motion as soon as practicable.  The Debtors request that they be authorized to serve a copy of the signed Interim Order, which fixes the date and time for the Final Hearing and for the filing of objections to the Motion, if any, by first class mail upon (i) William A. Hazeltine, Sullivan Hazeltine Allinson LLC, 4 East 8th Street, Wilmington, DE  19801 (counsel for the Debtors); (ii) the Office of the United States Trustee, 844 King Street, Suite 2007, Wilmington, DE; (iii) Mark X. Mullin, Haynes and Boone, LLP, 2323 Victory Avenue, Dallas, Texas 75219 (counsel for the Senior Agent and Subordinated Agent) and (iv) counsel for the Committee (if one is appointed).  The Debtors request that the Court consider such notice of the Final Hearing to be sufficient under Rule 4001 of the Federal Rules of Bankruptcy Procedures.

## NOTICE

1.     Notice of this Motion has been served on (i) the Office of the United States Trustee for the District of Delaware; (ii) each of the Debtors' twenty largest unsecured creditors and/or their counsel; (iii) counsel for NexBank, SSB, as Administrative Agent and Collateral Agent for the Debtors' pre-petition secured lenders; (iv) the United States Department of Justice;

(v) the Internal Revenue Service, (vi) the United States Environmental Protection Agency, (vii) the Banks; (viii) the administrators of the Debtors' Employee Benefit Plans; and (ix) all parties that have requested special notice pursuant to Bankruptcy Rule 2002. Notice of the Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m). Due to the urgency of the circumstances surrounding this Motion and the nature of the relief requested, the Debtors respectfully submit that no further notice of this Motion is required.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Debtors respectfully request that this Honorable Court enter an order, substantially in the form attached hereto as Exhibit B, granting the relief requested herein and granting such other and further relief as is just and proper.

Date: April 27, 2010
Wilmington, Delaware

SULLIVAN • HAZELTINE • ALLINSON LLC

William A. Hazeltine (No. 3294)
John G. Pope (No. 4888)
4 East 8th Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 428-8191
Facsimile: (302) 428-8195

*Proposed Attorneys for the Debtors and
Debtors-in-Possession*

# Exhibit A

To be provided at a later date.

# Exhibit B

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| MOLL INDUSTRIES, INC., *et al.*,[1] | ) | Case No. 10-_____ (___) |
| | ) | Joint Administration Pending |
| | ) | |
| Debtors. | ) | **Related Docket No. _____** |

## INTERIM ORDER PURSUANT TO SECTIONS 361 AND
## 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001:
## (1) AUTHORIZING USE OF CASH COLLATERAL;
## (2) GRANTING ADEQUATE PROTECTION LIENS;
## (3) SCHEDULING AND APPROVING THE FORM AND METHOD OF
## NOTICE FOR A SUBSEQUENT HEARING; AND (4) FOR RELATED RELIEF

Upon consideration of the motion (the "Motion")[2] of Moll Industries, Inc., *et al.*,

the above-captioned debtors and debtors in possession (collectively, the "Debtors"), seeking

entry of an order pursuant to sections 361 and 363 of the Bankruptcy Code and Rule 4001 of the

Bankruptcy Rules: (1) authorizing the Debtors to use the Pre-petition Collateral (as defined

herein) including cash collateral, as such term is defined in Section 363 of the Bankruptcy Code

(the "Cash Collateral"); (2) granting adequate protection; (3) scheduling and approving the form

and method of notice of the final hearing on the Debtors' Motion; and (4) for other related relief

as necessary; and a hearing to consider the interim relief requested in the Motion having been

held on _____, 2010 (the "Interim Hearing"); and pursuant to Bankruptcy Rule 4001, due and

sufficient notice of the Motion having been given by the Debtors to the Notice Parties; and the

Court having considered the offers of proof, evidence adduced, and the statements of counsel at

the Interim Hearing; and all objections, if any, to the interim relief requested in the Motion

having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that

---

[1] The Debtors are the following entities: Moll Industries, Inc.; Moll Holdings, Inc.; Moll Europe
Holdings, LLC; and Moll Latin America Holdings, LLC.

granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtors pending a final hearing and otherwise is fair and reasonable and in the best interest of the Debtors, their estates, and their creditors and is essential for the continued operation of the Debtors' business; and after due deliberation and consideration and good and sufficient cause appearing therefor,

### IT IS HEREBY FOUND AND DETERMINED THAT:

A.     On April 27, 2010 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court, thereby commencing these cases (the "Chapter 11 Cases").   The Debtors are now operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or official committee has been appointed in the Chapter 11 Case. The Debtors' cases are being jointly administered.

B.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of the Chapter 11 Cases and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     Under the circumstances, the notice given by the Debtors of the Motion and the Interim Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 2002, 4001(b) and (c) and 9006 as required by 11 U.S.C. §§ 102, 361, 362, and 363.

D.     Prior to the Petition Date, the Senior Lenders made certain loans and advancements to debtor Moll Industries, Inc. ("Moll Industries") pursuant to that certain Amended and Restated Loan and Security Agreement dated as of December 31, 2004 by and among Moll Industries, Inc, as Borrowers, the Lenders that are signatories hereto (the "Senior

---

2 Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Lenders") and Heritage Bank, SSB, as the Administrative Agent (the "Senior Agent"),[3] as the same may have been amended from time to time thorough the Petition Date (the "Senior Credit Agreement"). All such loans, financial accommodations and other amounts owing by the Debtors to the Senior Agent and the Senior Lenders under, or in connection with, the Senior Credit Agreement and the other collateral and ancillary documentation executed in connection therewith (as amended, supplemented or otherwise modified, the "Senior Loan Documents") are hereinafter referred to as the "Senior Pre-Petition Obligations". The Senior Credit Agreement matured on December 31, 2009 and the Senior Pre-Petition Obligations became due and owing on that date.

E.     Prior to the Petition Date, the Subordinated Lenders made certain loans and advancements to Moll Industries pursuant to that certain Amended and Restated Senior Subordinated Secured Note and Security Agreement dated as of December 31, 2004 by and among Moll Industries, Inc, as Borrowers, the Lenders that are signatories hereto (the "Subordinated Lenders") and Heritage Bank, SSB, as the Administrative Agent (the "Subordinated Agent"),[4] as the same may have been amended from time to time thorough the Petition Date (the "Subordinated Note"). All such loans, financial accommodations and other amounts owing by the Debtors to the Subordinated Agent and the Subordinated Lenders under, or in connection with, the Subordinated Note and the other collateral and ancillary documentation executed in connection therewith (as amended, supplemented or otherwise modified, the "Subordinated Note Documents") are hereinafter referred to as the "Subordinated

---

[3] Heritage Bank, SSB has since changed its name to NexBank, SSB. Thus, all references herein to the "Senior Agent" and "Subordinate Agent" are to NexBank.
[4] Heritage Bank, SSB has since changed its name to NexBank, SSB. Thus, all references herein to the "Senior Agent" and "Subordinate Agent" are to NexBank.

Pre-Petition Obligations". The Subordinated Note matured March 10, 2010 and the Senior Pre-Petition Obligations became due and owing on that date.

F.     The remaining Debtors executed individual guarantees and security agreements with respect to both the Senior Credit Agreement (collectively, the "Senior Guarantees") and Subordinated Note (collectively, the "Subordinated Guarantees").

G.     Without prejudice to the rights, if any, of any other party (but subject to the limitations thereon described below in paragraphs 8 and 9, the Debtors admit that (i) the Senior Pre-Petition Obligations owing to the Senior Agent and the Senior Lenders under the Senior Credit Agreement, Senior Loan Documents and Senior Guarantees total at least $57,714,652.01 as of the Petition Date, exclusive of attorneys fees, costs, expenses or other charges; (ii) the Subordinated Pre-Petition Obligations owing to the Subordinated Agent and the Subordinated Lenders under the Subordinated Note, Subordinated Loan Documents and Subordinated Guarantees total at least $6,617,258.94 as of the Petition Date, exclusive of attorneys fees, costs, expenses or other charges (iii) the Senior Pre-Petition Obligations and Subordinate Pre-Petition Obligations constitute the legal, valid and binding obligations of the Debtors, enforceable in accordance with the Senior Loan Documents, Subordinated Note Documents, Senior Guarantees, and Subordinated Guarantees (collectively, the "Loan Documents"); (iv) no portion of the Indebtedness is subject to avoidance, subordination, recharacterization, offset, counterclaim or defense; and (v) the Debtors granted to the Senior Lenders and Subordinated Lenders valid, perfected and enforceable liens upon and security interests (the "Pre-Petition Liens") in the collateral described in the Loan Documents (the "Pre-Petition Collateral").

H.     The Debtors have requested that the Court authorize their use of Cash Collateral for the purposes set forth in the budget that is attached as Exhibit 1 hereto, which may be supplemented or extended upon the express written agreement of the Agent (the "Budget").

I.     The Debtors have requested immediate entry of this Order (the "<u>Interim Order</u>") pursuant to Bankruptcy Rule 4001(b)(1),(b)(2) and (c)(2).  The Motion and this Interim Order comply with Local Bankruptcy Rules 4001-2 and 4001-3.  The Debtors have an immediate need to obtain use of the Cash Collateral for, among other things, the continuation of their business operations, the preservation and orderly disposition of their businesses and assets as a going concern, and the orderly administration of their estates.  Without the use of Cash Collateral, the Debtors will be unable to pay necessary expenses.  The ability of the Debtors to obtain liquidity through the use of the Cash Collateral is vital to the Debtors efforts to maximize the value of their assets.  Absent granting the relief sought by this Interim Order, the Debtors' estates will be immediately and irreparably harmed.  Thus, the use of the Cash Collateral in accordance with this Interim Order is, therefore, in the best interest of the Debtors' estates.

J.     The Senior Agent and Subordinated Agent (collectively referred to herein as, the "Agent") do no consent to the Debtors' use of the Pre-Petition Collateral, including the Cash Collateral, except in accordance with the terms and conditions contained in this Interim Order.  Subject to compliance with the conditions of this Interim Order, the Debtors are permitted to use the Cash Collateral during the period covered by this Interim Order, and in the amounts set forth in the Budget and only for the purposes set forth therein and herein.

K.     The terms of this Interim Order were negotiated in good faith and at arm's length between the Debtors the Senior Agent on behalf of the Senior Lenders and the Subordinated Agent on behalf of the Subordinated Lenders.

L.     Good cause has been shown for the entry of this Interim Order.  In addition, the terms and conditions of the Debtors' proposed use of the Cash Collateral are fair and reasonable and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

M.     This Interim Order is entered pursuant to, and shall be construed and be consistent with, sections 361 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b)(2).

Based on the foregoing, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED AND ADJUDGED THAT:

1.     **Motion Granted.**   The Motion is GRANTED on an interim basis, as set forth herein.  The Debtors shall be, and hereby are, authorized to use Cash Collateral on the terms and conditions set forth in this Interim Order.  The Debtors are authorized to use Cash Collateral in accordance with the Budget; *provided, however*, that the Debtors may exceed any line item in the Budget by up to ten percent (10%) in any week, so long as the aggregate amount of the Budget for any week is not exceeded by more than ten percent (10%) (the "Variance").  Any unused portion of the variance will carry over to the following week.

2.     **Reporting and Access.**  The Debtors are directed to deliver to the Agent and any official committee appointed in these Chapter 11 Cases on Wednesday of each week (if not sooner) a reconciliation for the prior week of all budgeted amounts that compares for each line item the amounts forecast under the Budget to the actual amount achieved by the Debtors for such week, together with all other reasonably requested information.  In addition, the Debtors shall provide the Agent with reasonable access to the Debtors' facilities, books and records, at reasonable times that shall not infringe upon the Debtors' normal operations.

3.     **Adequate Protection Claim**.  Because the Debtors' use of Cash Collateral may result in the diminution of the value of the Cash Collateral and Senior Lenders' and Subordinated Lenders' respective interests therein, the Court hereby grants super-priority administrative expense claims against the Debtors' estates in favor of the Senior Agent, on behalf of and for the ratable benefit of the Senior Lenders and the Subordinated Agent, on behalf of and for the ratable

benefit of the Subordinated Lenders pursuant to section 507(a)(2) and 507(b) of the Bankruptcy Code, which claims shall be in the amount of any post-petition diminution in the value of the Senior Lenders' and Subordinated Lenders' interests in the Cash Collateral or any of the Pre-Petition Collateral from and after the Petition Date (the "Adequate Protection Claims"). In addition, the Adequate Protection Claims shall have priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, 11 U.S.C. §§ 105, 326, 328, 330, 331, and 726 and shall at all times be senior to the rights of the Debtors, and any successor trustee or any creditor, in the Debtors' cases, or to the extent permitted by applicable law, any subsequent proceeding under the Bankruptcy Code, provided however that the Adequate Protection Claims shall be subject to the Carve-Out as defined in Paragraph 4 of this Order.

4. **Replacement Liens.** As additional adequate protection, and to secure the Adequate Protection Claims, the Senior Agent (on behalf of and for the ratable benefit of the Senior Lenders) and the Subordinated Agent (on behalf of and for the ratable benefit of the Subordinated Lenders), are hereby granted, effective immediately and without the necessity of the execution by the Debtors of financing statements, mortgages, security agreements, or otherwise, in accordance with section 361(2) of the Bankruptcy Code, replacement security interests and liens (collectively, the "Adequate Protection Liens") in and upon the Post-Petition Collateral (as defined below), all post-petition proceeds thereof and all post-petition assets of the Debtors and their estates (excluding, however, all claims, causes of action and proceeds thereof arising under sections 510, 544, 545, 546, 547, 548, 549, 550 and 551 of the Bankruptcy Code, collectively, "Avoidance Actions," and all proceeds therefrom) and all proceeds, rents and products of all of the foregoing and all distributions thereon (the "Post-Petition Collateral," together with the Pre-Petition Collateral, the "Collateral"), in each case to the same extent,

validity and priority as the security interests and liens of the Senior Lenders and Subordinated Lenders in and upon the Pre-Petition Collateral, whether such property and assets were acquired by the Debtors before or after the Petition Date, including: (a) all proceeds of the foregoing; (b) all accessions to, substitutions and replacements for, and profits and products of the foregoing; (c) the Pre-Petition Collateral; and (d) all property of the Debtors held by the Agent, Senior Lenders and/or Subordinated Lenders. The Adequate Protection Liens shall be subject only to (i) valid, perfected, enforceable and unavoidable liens and security interests that were superior in priority to the Pre-Petition Liens prior to the Petition Date, and only to the extent such Pre-petition Liens are not otherwise subject to avoidance or subordination; (ii) following the occurrence of the Termination Date (as defined herein), the payment of allowed professional fees and disbursements incurred by the Debtors or any official committee of unsecured creditors appointed in the Chapter 11 Cases (the "Creditors Committee") in an aggregate amount incurred after the Termination Date not in excess of an amount to be agreed upon between the Debtors and the Agent (plus any unpaid professional fees and expenses authorized in the budget and allowed by the Court that were incurred prior to the occurrence of the Termination Date) (the "Professional Fee Carve-Out"); and (iii) the payment of United States Trustee Fees pursuant to 28 U.S.C. § 1930 (the "UST Carve-Out" and, together with the Professional Fee Carve-Out, the "Carve-Out"). The Adequate Protection Liens shall be of the same priority as the Pre-Petition Liens.

5. **Fees and Expenses.** As further adequate protection of the Agent's and Senior Lenders' and Subordinated Lenders' interests in the Pre-petition Collateral, the Debtors shall pay the reasonable fees and disbursements of the Agent's attorneys and financial advisors incurred in connection with this chapter 11 case upon submission of invoices to the Debtors with copies to the Creditors Committee and the U.S. Trustee, provided that such fees and disbursements shall

be paid only to the extent that such fees and disbursements relate to Pre-petition Collateral in which the Agent and Senior Lenders and/or Subordinated Lenders have an interest or the granting of adequate protection to the Agent and Senior Lenders and/or Subordinated Lenders. Subject to the following objection procedures, the Debtors shall promptly pay all reasonable fees and expenses submitted by the Agent's professionals within eleven (11) business days after receipt of such invoices. Notwithstanding the foregoing, the Debtors, the Creditors Committee or the U.S. Trustee may object to the reasonableness of such fees and expenses in writing within ten (10) business days of receipt of such invoice. Any such objection must identify with specificity the particular objectionable entries. If such objection cannot be resolved within five (5) business days of service of such invoice (which deadline may be extended by mutual agreement of the Agent and the objecting party), the objecting party shall file with the Court and serve upon such professional a Fee Objection limited to the issue of the reasonableness of the disputed fees and expenses; provided that the Debtors shall timely pay in accordance with this Interim Order any fees, costs and expenses not subject to a Fee Objection. Upon the filing of a Fee Objection, this Court shall schedule and conduct an expedited hearing to determine the reasonableness of the fees and expenses identified therein, that the Debtors shall remit payment promptly to the applicable professional for such fees and expenses are determined by the Court to be reasonable.

6.  **Payment of Professional Fees**.  For so long as the Termination Date has not occurred, (i) the Debtors shall be permitted to pay administrative expenses allowable and payable under Sections 330, 331 and 503(b)(2) of the Bankruptcy Code, as the same becomes due and payable and in such amount as provided for in the Budget and (ii) such payments shall not be applied to reduce the Professional Fee Carve-Out.

7.    **Taxes and Insurance**.  The Debtors shall: (a) continue to keep the Collateral fully insured against all loss, peril and hazard; and (b) pay any and all post-petition taxes, assessments and governmental charges with respect to such Collateral in accordance with the Budget.

8.    **Lien Review**.  The Debtors' admissions and releases contained in paragraph G herein above (i) shall be binding on the Debtors and the Debtors' estates and (ii) shall be binding upon all other parties in interest, including the Committee and any other official committee appointed in these Chapter 11 Cases unless (1) a party has properly filed an adversary proceeding by no later than the date that is seventy-five days from the date of the entry of the Interim Order (or, in the case of the Committee, sixty (60) days from the appointment of such committee) (the "Investigation Termination Date") challenging the validity, perfection, enforceability, and extent of the Indebtedness and Pre-Petition Liens and any potential claims of the Debtors or their estates against Senior Agent, Subordinated Agent and/or the Senior Lenders and/or Subordinated Lenders.  Any such adversary proceeding must be made by a party in interest with standing and must be properly commenced on or before the Investigation Termination Date.  If no such action is filed on or before the Investigation Termination Date, all holders of claims and interests as well as other parties in interest will be forever barred from bringing or taking any such action, and the Debtors' admissions and releases made in paragraph G herein above will be binding on all parties in interest.  Professional fees and expenses incurred by the Committee or any other Court-appointed professional in connection with any review and investigation may not exceed $25,000.  All of the Agent's rights to (i) object to any professional fee applications, and (ii) seek disgorgement of any interim fees and expenses paid, are preserved in their entirety.

9.    **Lien Contests.**  No Court-appointed professional shall be entitled to payment of any fees or expenses from Cash Collateral or the Carve-Out for commencing or prosecuting any

claim or action, the purpose of which is to seek or the result of which would be to obtain any order, judgment, determination, declaration or similar relief (x) invalidating, setting aside, avoiding or subordinating, in whole or in part, the liens and security interests of the Agent and the Senior Lenders and/or the Subordinated Lenders in the Collateral; or (y) preventing, hindering or otherwise delaying, whether directly or indirectly, the exercise by the Agent of any of its rights and remedies under this Interim Order.

10. **Books and Records.** The Debtors are directed to keep their books and records of original entry, including without limitation, records of sale, credits authorized (whether or not credit memoranda have been issued), purchases, accounts receivable, cash receipts, and cash disbursements, current and updated, so that all business activity is posted to them in the ordinary course of the Debtors' business.

11. **Termination Date.** Each of the following shall constitute  a termination event (each, a "Termination Event"):

 i.  the effective date of any confirmed plan of reorganization in the Chapter 11 Cases;

 ii.  the occurrence of any breach by the Debtors of the Interim Order (including, but not limited to, the Debtors' failure to adhere to the Budget);

 iii.  the dismissal of any of the Debtors' Chapter 11 Cases or the conversion of any such case to one under Chapter 7 of the Bankruptcy Code;

 iv.  upon and following the entry of an order authorizing the appointment in any of the Debtors' Chapter 11 Cases of a trustee or an examiner with enlarged powers (beyond those set forth in § 1106(a)(3) and (4) of the Bankruptcy Code), relating to the operation of the business of the Debtors;

 v.  the Interim Order is stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of Agent;

 vi.  the Court enters an order granting a party relief from the automatic stay with respect to any portion of the Collateral;

 vii.  this or any other Court enters an order or judgment in any of the Debtors' Chapter 11 Cases modifying, limiting, subordinating or avoiding the priority of

any Indebtedness or the perfection, priority or validity of the Senior Lenders' and/or Subordinated Lenders' Pre-Petition Liens or Adequate Protection Liens or imposing, surcharging or assessing against the Senior Agent and the Senior Lenders or the Subordinated Agent or Subordinated Lenders or any Collateral any fees, costs or expenses, whether pursuant to section 506(c) of the Bankruptcy Code or otherwise; or

viii.    May 31, 2010 for purposes of the Interim Order.

12.    **Rights Upon Occurrence of Termination Date.**    Upon the occurrence of a Termination Event (the "Termination Date") and three (3) Business Days after Agent has provided notice of same to counsel for the Debtors, the Committee (if one has been appointed) and the Office of the United States Trustee, absent any further Order of this Court entered during such three-day period, the Debtors' ability to use Cash Collateral will terminate and the Senior Agent's and Subordinated Agent's consent to the use of Cash Collateral will be deemed withdrawn.  Upon the occurrence of a Termination Date, the parties' rights to seek a Court order lifting the automatic stay, providing adequate protection, allowing for the continued use of Cash Collateral or any other relief are preserved.  The parties agree that the hearing on any motion filed by either the Debtors, the Agent or the Committee following and arising from notice of a Termination Date (including, but not limited to, a motion to continue using Cash Collateral, a motion to lift the automatic stay or a motion to terminate exclusivity) may be expedited, and will, at the convenience of the Court, take place on the earliest to occur of (i) the next regularly scheduled pre-set hearing date in the Chapter 11 Cases; or (ii) such other date as the Court sets.

13.    **Survival of Liens.**    The liens, security interests, administrative priorities and other rights and remedies granted to the Senior Agent for the ratable benefit of the Senior Lenders and the Subordinated Agent for the ratable benefit of the Subordinated Lenders by the provisions of this Interim Order shall continue beyond and survive the expiration of this Interim Order, and, to the extent permitted by applicable law, shall not be modified, altered or impaired in any manner

by (a) any other financing or extension of credit or incurrence of indebtedness by the Debtors under section 364 of the Bankruptcy Code or otherwise, (b) the entry of an order or orders confirming any plan of reorganization or liquidation in these Chapter 11 Cases, or (c) the entry of an order converting any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases or terminating any joint administration of the Chapter 11 Cases, without the express written consent of the Agent.

14. **No Liability.** No act committed or action taken by the Agent or the Senior Lenders and/or Subordinated Lenders pursuant to this Interim Order, including without limitation, approval of the Budget, or the collection of any indebtedness owed to the Agent or the Senior Lenders and/or Subordinated Lenders, or by virtue of the interests, rights, and remedies granted to or conferred upon the Agent and/or the Senior Lenders and/or Subordinated Lenders under the Loan Documents or this Interim Order, shall be used, construed, or deemed to hold the Agent, the Senior Lenders, or the Subordinated Lenders to be in "control" of or participating in the governance, management, or operation of the Debtors for any purpose.

15. **Immediate Effect of Order.** Notwithstanding Bankruptcy Rule 7062, the terms and conditions of this Interim Order shall: (a) be immediately enforceable pursuant to Bankruptcy Rule 8005; and (b) not be stayed absent: (i) an application by a party in interest for such stay in conformity with such Bankruptcy Rule 8005; and (ii) a hearing upon notice to the Debtors and the Agent.

16. **Notice to be Provided.** The Debtors shall forthwith serve by first-class United States Mail a copy of this Interim Order on the Notice Parties (which shall constitute adequate notice of the final hearing).

17. **Final Hearing.** The hearing to consider entry of a final order authorizing and approving the use of Cash Collateral and providing adequate protection is hereby scheduled for

May ___, 2010 at __:___ _.m.  Objections to the entry of a final order, if any, shall be filed with the Court by not later May ___, 2010 at 4:00 p.m. EDT (the "Objection Deadline").  Copies of any objections must also be served, so at to be received by the Objection Deadline upon the following persons:  (i) William A. Hazeltine, Sullivan Hazeltine Allinson LLC, 4 East 8th Street, Wilmington, DE  19801 (counsel for the Debtors); (ii) the Office of the United States Trustee, 844 King Street, Suite 2007, Wilmington, DE; (iii) Mark X. Mullin, Haynes and Boone, LLP, 2323 Victory Avenue, Dallas, Texas 75219 (counsel for NexBank); (iv) Richard W. Riley, Duane Morris LLP, 1100 North Market Street, Suite 1200, Wilmington, DE 19801-1246 (local counsel for NexBank); and (v) counsel for the Creditors Committee (if one is appointed).

18. **Retention of Jurisdiction.**  The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

SIGNED this ___ day of April, 2010.

_____
UNITED STATES BANKRUPTCY JUDGE