IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| MOLL INDUSTRIES, INC., *et al.*,[1] | ) | Case No. 10-11371 (MFW) |
| | ) | Jointly Administered |
| Debtors. | ) | **Related Docket No. 411** |

## DECLARATION OF ROBERT M. LEWIS IN SUPPORT OF DEBTORS' APPLICATION FOR AN ORDER PURSUANT TO SECTIONS 327, 328 AND 1107(b) OF THE BANKRUPTCY CODE, FED. R. BANKR. P. 2014(a) AND DEL. BANKR. L. R. 2014-1 FOR AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF NAI PIEDMONT TRIAD COMMERCIAL PROPERTIES, INC., AS REAL ESTATE BROKER FOR THE DEBTORS AND DEBTORS-IN-POSSESSION

I, Robert M. Lewis, being duly sworn, state the following under penalty of perjury.

1. I am Manager of NAI Piedmont Triad Commercial Properties, Inc. ("NAI"), a leading commercial real estate agency with offices located in Burlington and Greensboro, North Carolina, and I make this Declaration on behalf of NAI (the "Declaration"). I submit this Affidavit in support of the application (the "Application") of the above-captioned Debtors for entry of an order pursuant to Sections 327, 328 and 1107(b) of the Bankruptcy Code authorizing and approving the employment and retention of NAI as real estate broker in these Chapter 11 cases. Except as otherwise noted, I have personal knowledge of the matters set forth herein.

2. On or about November 8, 2010, Debtor Moll Industries, Inc. ("Moll") and NAI entered into that certain Exclusive Right to Sell Listing Agreement (the "Agreement") attached as Exhibit A to the Application. Pursuant to the Agreement, and subject to Bankruptcy Court approval, Moll retained NAI as real estate broker for the purposes of marketing and selling the Debtors' real property located in Seagrove, North Carolina (the "Property").[2]

---

[1] The Debtors in these cases are as follows: Moll Industries, Inc., Case No. 10-11371 (MFW); Moll Holdings, Inc., Case No. 10-11372 (MFW); Moll Europe Holdings, LLC, Case No. 10-11373 (MFW); and Moll Latin America Holdings, LLC, Case No. 10-11374 (MFW).

[2] The Property consists of four buildings totaling 130,895 square feet and acreage of approximately 20.29 + or − acres.

3. NAI is a commercial real estate firm that markets, leases and sells of commercial properties in North Carolina. NAI has industrial, retail and office brokerage groups, and represents buyers, sellers, landlords and tenants in connection with the following: Acquisitions & Dispositions; Investment Sales; Tax-Deferred Exchanges; Sale/Leasebacks; Leasing & Subleasing; Tenant Representation; Site Selection; Build-to-Suits; Market Research & Valuation; Consulting & Strategic Planning; and Property Management. NAI has successfully completed transactions with Jefferson Pilot Financial, Guilford Mills, Home Depot, MCI, Sears, CVS, Walgreens, Portrait Homes, Ruby Tuesdays, Nuvox Communications, Dixon Hughes, BB&T, Starbucks, Quizno's and Werner Company.

4. Pursuant to the Agreement, and in consideration of the services provided by the NAI, NAI will be entitled to receive as its sole compensation a commission of 6% of the gross sales price of the Property. If no other broker is involved in the sale, the commission shall be adjusted to 5% of the gross sales price. This commission structure is consistent with the commission structures typically utilized by NAI and other similar professionals in North Carolina.

5. To the best of my knowledge and belief, and except as described herein, neither I nor NAI nor any of its personnel has any connection or relationship with the Debtors that would conflict with the scope of NAI's retention or would create any interest adverse to the Debtors' estates, any statutorily appointed committee or any other party in interest.

6. NAI has reviewed its records regarding contacts and/or conflicts with the following: the Debtors, the members of Debtors' Board of Directors, the Debtors' executive officers, professionals sought to be retained by the Debtors in this bankruptcy case, the Debtors' secured creditors, and the Debtors' twenty (20) largest unsecured creditors (collectively the "Potential Parties in Interest"). This inquiry has revealed that neither NAI nor any of its

personnel has represented or has had a relationship with any of the Potential Parties in Interest within the past five (5) years.

7. Based on the foregoing, to the best of my knowledge and belief, neither I nor NAI holds or represents any interest adverse to the Debtors' estates and NAI will not represent any other entity in connection with these chapter 11 cases.

8. Based on the information available to me, I believe that NAI is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code and holds no interest adverse to the Debtors and their estates for the matters for the matters for which NAI is to be employed.

9. I am not related or connected to and, to the best of my knowledge, no other professional of NAI is related or connected to any United States Bankruptcy Judge for the District of Delaware or the United States Trustee or to any employee in the offices thereof.

10. There is no agreement or understanding between NAI and any other person or entity for sharing compensation received or to be received for services rendered by NAI in connection with these chapter 11 cases.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 10, 2010

_____
Robert M. Lewis



# EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT

**REALTOR®** *North Carolina Association of REALTORS®*

This Exclusive Right to Sell Listing Agreement is by and between
NAI Piedmont Triad Commercial Properties, Inc.
(Name of Firm), hereinafter known as "Firm" and
Moll Industries

hereinafter known as "Client".

In consideration of Firm's agreement to list the following described property, hereinafter known as "Property", for sale and to use its efforts to find a buyer. Client agrees with Firm as follows:

1. **EXCLUSIVE RIGHT TO SELL:** For a period extending until midnight on <u>October 31, 2011</u>, Firm shall have the exclusive right to sell the Property as agent of Client at the price and on the terms set forth below, or upon such other terms as may be agreed upon in writing by Client with any buyer. Client represents that, as of the commencement date of this Agreement, Client is not a party to a listing agreement with any other firm.

2. **BROKER COOPERATION/AGENCY RELATIONSHIPS:** Firm has advised Client of Firm's general company policy regarding cooperating with subagents, buyer agents or dual agents. Client has received and read the "Working with Real Estate Agents" publication and authorizes the Firm to compensate (subject to paragraphs 7b.(i) and 7b.(ii)) and cooperate with the following (Firm agrees to inquire of all agents at the time of initial contact as to their agency status): (CHECK ALL APPLICABLE AGENCIES)

   ☒ subagents of Client

   ☒ buyer agents

   ☒ dual agents representing both Client and the buyer in the same transaction (subject to the terms of the attached Dual Agency Addendum).

3. **PROPERTY:** (Address) <u>Moll Industries, US Highway 220A South, Seagrove, North Carolina</u>
   (Legal Description/Description)
   Buildings (4) totally 130,895 square feet and acreage of approximately 20.29 + or - acres. More fully described in Deed Book 1400 at Page 1009 in the Randolph Registry of Deeds.

   ☒ See attached Exhibit <u>"A"</u> for legal description/description of premises.

4. **LISTING TERMS:**

Sale Price: $875,000.00
Client Financing Terms: Cash at Closing
Possession Delivered: At Closing
Other Terms:
n/a

☐ See attached Exhibit n/a for additional listing terms.

ADVERTISING AND DATABASE LISTINGS: In connection with the marketing and sale of the Property, Client authorizes and directs Firm: (CHECK ALL APPLICABLE SECTIONS)

☒ to place a sign on the Property. Client shall remove all other signs.

☒ to advertise the Property, including, but not limited to, placing information about the Property on the Internet either directly or through a program of any listing service and/or information exchange of which the Firm is a member.

☒ to permit other firms who belong to any listing service or information exchange of which the Firm is a member to advertise the Property on the Internet in accordance with the rules and regulations of the listing service or information exchange.

☒ to submit pertinent information concering the Property to any listing service or information exhange of which Firm is a member and to furnish to such listing service or infomation exchange notice of all changes of information concerning the Property authorized in writing by Client. Client authorizes Firm, upon execution of a sales contract for the Property, to notify the listing service or information exhange of the pending sale, and upon closing of the sale, to disseminate sales information, including sales price, to the listing service or information exchange, appraisers and real estate licensees.


PREPARED BY: Robert M. Lewis, Manager
STANDARD FORM 571 Revised 7/2008 © 7/2009, North Carolina Association of REALTORS®, Inc
RealFAST® Software, ©2010, Version 6.16, Software Registered to: Office Manager, Robert M. Lewis & Associates
10/29/10 16:21:46



Page 1 of 4

MARKETING EXPENSE: In the event that the Property does not sell during the term of this Agreement, Client shall nonetheless be obligated to reimburse Firm for actual documented expenses incurred in marketing the Property up to the amount of $ 0.00           .

5. **SPECIAL PROVISIONS:**
n/a

☐ See attached Exhibit n/a            for special provisions.

6. **COOPERATION WITH FIRM:**

   a. **Exclusive Rights:** Client agrees to cooperate with Firm to facilitate the sale of the Property. Property may be shown only by appointment made by or through Firm. Client immediately shall refer to Firm all inquiries or offers it may receive regarding the Property. Client agrees to cooperate with Firm in bringing about a sale of the Property. All negotiations shall be conducted through Firm. Firm shall be identified as the contact firm with all state and local economic development agencies being notified of the Property's availability.

   b. **Services:** No management services, repair services, collection services, notices, legal services or tax services shall be provided by Firm. In the event that Firm does procure any of these services at the request of Client, it is understood and agreed that Firm shall only be acting in the capacity of procurer for Client and shall accrue no liability or responsibility in connection with any services so obtained on behalf of Client. This exclusion of liability and responsibility shall not apply in the event that Firm directly contracts with Client to provide any such service.

7. **COMMISSIONS:** The amount, format or rate of real estate commission is not fixed by law. Commissions are set by each broker individually and may be negotiable between a firm and its client.

   a. **Sales Commissions:**

   (i) Commissions shall be earned when Seller accepts an unconditional offer from buyer or when all conditions have been met following Client's acceptance of a conditional offer from buyer, whether buyer is procured by Firm, the Client or anyone else during the term of this Agreement. Client shall pay Firm a commission equal to six
   percent (      6 %) of the gross sales price of the Property, or the sum of n/a
   ($         n/a  ), whichever is greater, and/or other:
   n/a
   Commission shall be paid in cash or by bank check. Gross sales price includes any and all consideration received or receivable, in whatever form, by Client including, but not limited to, the assumption or release of existing liabilities. Client shall pay the commission upon delivery of the deed or other evidence of transfer of title or interest; provided, however, if the transaction involves an installment contract, then Client shall pay the commission upon the signing of such installment contract. In the event of any breach by Client of any contract of purchase and sale, it is understood and agreed that the commission remains earned and payable upon notice given by Client to buyer of Client's intent not to proceed with such sale, notwithstanding the basis of such intent not to proceed. In the event Client contributes or conveys the Property or any interest therein to a joint venture, partnership or other business entity or executes an exchange, the commission shall be calculated on the fair market value of the Property or interest therein contributed, conveyed, transferred or exchanged and is payable at the time of the contribution, conveyance, transfer or exchange. If Client is a partnership, corporation or other business entity, and an interest in the partnership, corporation or any other business entity is transferred, whether by merger, outright purchase, or otherwise, in lieu of a sale of the Property, and applicable law does not prohibit the payment of a fee or commission in connection with such sale or transfer, the commission shall be calculated on the fair market value of the Property, rather than the gross sales price, multiplied by the percentage of interest so transferred, and shall be paid by Client at the time of the transfer.

   ☒ If this box is checked, notwithstanding the foregoing, in the event that there is no cooperating agent involved in a sale transaction, the commission stated in (i) above shall be adjusted to Five                      percent( 5    %) of the gross sales price of the Property or n/a                                                   ($ n/a         ), whichever is greater, and/or other:
   n/a
   For purposes of this subsection only, "cooperating agent" shall mean any agent other that the individual licensee signing on behalf of Firm below.

   (ii) **Options:** 0.00        % of any option fees shall be paid to Firm at the time such monies are paid to Client, said amount to be applied to commissions payable pursuant to Paragraph 7.a.(i), provided, Firm shall not be paid, on account of this provision, an amount in excess of its entitlement pursuant to Paragraph 7.a.(i).

   (iii) Should there be a forfeiture of earnest money, Firm shall be entitled to 0.00        % of same, provided that Firm shall not receive an amount in excess of the commission set forth in Paragraph 7.a.(i).

   b. **General Commissions Provisions:**

   (i) Firm shall not be required to compensate or pay any commission to, either directly or indirectly, a buyer who seeks to be compensated or paid a commission in connection with any transaction pursuant to this Agreement.

   (ii) If Firm has worked directly with a buyer in connection with the Property, either as a client or a customer, and such relationship is evidenced in writing (either by a CONFIRMATION OF AGENCY RELATIONSHIP AND REGISTRATION STATEMENT - NCAR

PREPARED BY: Robert M. Lewis, Manager
STANDARD FORM 571 Revised 7/2008 © 7/2009. North Carolina Association of REALTORS®, Inc.
RealFAST® Software. ©2010. Version 6.16 Software Registered to: Office Manager, Robert M. Lewis & Associates
10/29/10 16:21:46

*Client shall not be liable to the Firm for the payment of commission if any contract of purchase or sale is terminated due to a breach by the buyer.*

Form 510 - or substantially similar registration document), then Firm may not compensate or pay any commission to another real estate agent (not associated with Firm) in connection with any transaction pursuant to this Agreement involving said registered buyer.

(iii) In the event Client fails to make payments within the time limits set forth in this Agreement, then the delinquent amount shall bear interest from the date due until paid at the maximum rate permitted in the state of North Carolina. If Firm is required to institute legal action (including mediation or arbitration) against Client relating to this Agreement, Firm shall be entitled to costs of such action.

(iv) In the event Client sells or otherwise disposes of its interest in the Property, Client shall remain liable for payment of the commissions provided for in this Agreement, including, without limitation, the commission obligations set forth in Paragraph 7.a. unless the purchaser or transferee assumes all of such obligations in writing and Firm agrees in writing to such assumption.

(v) "Buyer" and "registered prospect" as used herein shall be deemed to include, but not be limited to, their successors or assigns, agents, principals, officers, directors, employees or shareholders thereof or any affiliate, alter-ego or commonly controlled entity of such buyer or registered prospect.

8. REGISTERED PROSPECTS:
   a. Prior Listing Agreements: If the Property was exclusively listed for sale with another agency prior to this Agreement, then Client shall provide Firm in writing the names of registered prospects and the duration of the protection period under the prior listing agreement. If Client provides such information to Firm within twenty (20) days of the date of this Agreement, then a direct or indirect sale or agreement to sell during such protection period to a registered prospect is excluded from this Agreement.
   b. Later Sale To Registered Prospect: If within 120 days after the expiration of this Agreement (the "Protection Period"), Client directly or indirectly sells or agrees to sell the Property to a party to whom Firm (or any other agent acting for or through Firm) has communicated concerning the Property during the term of this Agreement, Client shall pay Firm the same commission to which Firm would have been entitled had the sale been made during the term of this Agreement; provided that names of prospects are delivered or postmarked to Client within fifteen (15) days after the expiration of the exclusive listing period. **In the event the Property is exclusively listed for sale with another agency after the expiration of this Agreement and Client directly or indirectly sells or agrees to sell the Property to a registered prospect during the Protection Period, then Client shall pay to Firm the commission provided for in Paragraph 7.**

9. LEASE PROTECTION PROVISION: In the event that the Property is leased during the term hereof, it is acknowledged that Firm shall nonetheless earn a commission upon execution of such lease agreement. The parties agree to act in good faith in determining that the commission is an amount reasonable in this area for the type of Property.

10. AUTHORITY: Client represents and warrants to Firm that it has the right to offer the Property for sale. Each signatory to this Agreement represents and warrants that he or she has full authority to sign this Agreement and such instruments as may be necessary to effectuate any transaction contemplated by this Agreement on behalf of the party for whom he or she signs and that his or her signature binds such party.

11. BANKRUPTCY: In the event that the Property comes under the jurisdiction of a bankruptcy court, Client shall immediately notify Firm of the same and, if Client is the subject of bankruptcy, shall promptly take all steps necessary to obtain court approval of Firm's appointment to sell the Property, unless Firm shall elect to terminate this Agreement upon said notice.

12. INDEMNIFICATION: Client represents and warrants that the information set forth herein and any other information as may be furnished to Firm by Client, including information relating to enviromental matters, is correct to the best of Client's knowledge. Firm shall have no obligation or responsibility for checking or verifying any such information, except as may be required by law. ~~Client shall indemnify Firm for any and all loss or damage sustained by Firm as a result of (i) Firm's or Client's furnishing such information to a buyer or anyone else; and (ii) the presence of storage tanks on, or the presence or release of hazardous substances, materials and wastes on~~ or ~~from the Property.~~

13. PARTIES AND BENEFITS: This Agreement shall be binding upon and inure to the benefit of the parties, their heirs, successors and assigns and their personal representatives. Client agrees that at any time during the term of this Agreement, Firm may ~~either assign Firm's rights and responsibilities hereunder to another real estate agency, or~~ transfer to another person or entity all or part of the ownership of Firm's real estate agency, and that in the event of any such ~~assignment or~~ transfer, this Agreement shall continue in full force and effect; provided, that any assignee or transferee must be licensed to engage in the business of real estate brokerage in the State of North Carolina. In the event of any such ~~assignment or~~ transfer, Client may terminate this Agreement without cause on thirty (30) days' prior written notice to the assignee or transferee of Client's intent to terminate this Agreement.

14. ENTIRE AGREEMENT; AMENDMENT; SEVERABILITY; GOVERNING LAW: This Agreement contains the entire agreement of the parties and supercedes all prior written and oral proposals, understandings, agreements and representations, all of which are merged herein. No amendment or modification to this Agreement shall be effective unless it is in writing and executed by all parties hereto. No waiver of any breach of any obligation or promise contained herein shall be regarded as a waiver of any future breach of the same or any other obligation or promise. The invalidity of one or more provisions of this Agreement shall not affect the validity of any other provisions hereof and this Agreement shall be construed and enforced as if such invalid provisions were not included. It shall not be deemed a breach of this Agreement for Firm to comply with an order resulting from an arbitration conducted by a REALTOR® association or issued by a court of competent jurisdiction. This Agreement shall be governed by and construed in accordance with the laws of the State of North Carolina, *or elected*

PREPARED BY: Robert M. Lewis, Manager
STANDARD FORM 571 Revised 7/2006 © 7/2009 North Carolina Association of REALTORS®, Inc
RealFAST® Software, ©2010, Version 6 16, Software Registered to: Office Manager, Robert M. Lewis & Associates
10/28/10 18:21 46

*provided, however, that this Agreement shall not be binding upon any trustee appointed in the Client's pending bankruptcy case without the agreement of such trustee.*

15. **EIFS/SYNTHETIC STUCCO:** To the best of Client's actual knowledge, the Property has not been clad previously (either in whole or in part) with an "exterior insulating and finishing system" commonly known as "EIFS" or "synthetic stucco", unless disclosed as follows (If the Client does not wish to disclose, please note "No Representations"):
n/a

16. **INTELLECTUAL PROPERTY RIGHTS:** Client grants to Firm and any listing or commercial database service in which Firm or its agents participate a non-exclusive, perpetual license to use any information, photographs, drawings or other intellectual property that Client provides to Firm, including the rights to display, reproduce or make derivative works from the intellectual property.

**THE AGENT SHALL CONDUCT ALL BROKERAGE ACTIVITIES IN REGARD TO THIS AGREEMENT WITHOUT RESPECT TO THE RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, HANDICAP OR FAMILIAL STATUS OF ANY PARTY OR PROSPECTIVE PARTY TO THE AGREEMENT.**

THE NORTH CAROLINA ASSOCIATION OF REALTORS®, INC. MAKES NO REPRESENTATION AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION.


Moll Industries
CLIENT _____Jeffrey Merritt_____  DATE  11/8/10
By: Jeffrey Merritt, Chief Restructuring Officer


FIRM: (SEAL)
NAI Piedmont Triad Commercial Properties, Inc.
(Name of Firm)
By: _Robert M Lewis_  10-29-2010  (SEAL)
Name: Robert M. Lewis, CCIM
Individual License #: North Carolina 137233
Date: October 29, 2010
Address: 3005 South Church Street
Burlington, North Carolina 27215
Phone: 336-214-1799 cell : 336-358-3228 direct
Facsimile: 336-586-1992
E-mail: blewis@naipt.com or rlewis@ccim.net